# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHASITY A. WALLACE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-19-195-SPS |
| ) | |
| COMMISSIONER of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Chasity A. Wallace requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]"  *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied.  If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty-three years old at the time of the administrative hearing (Tr. 47, 205). She completed the eleventh grade, and has previously worked as a truck driver, long haul truck driver, and dump truck driver (Tr. 35, 221). The claimant alleges that she has been unable to work since May 1, 2016, due to diabetes, severe nerve damage in the left foot, left arm rotator cuff problems, and ulcerative colitis (Tr. 220).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 on August 9, 2015, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385, on October 23, 2017. Her applications were denied. ALJ Whitfield Haigler, Jr., conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 9, 2018 (Tr. 24-37). The Appeals Council then granted the claimant's request for review, adopted ALJ Haigler's findings at each step, and likewise determined that the claimant was not disabled in a written opinion dated April 18, 2019 (Tr. 4-11). The Appeals Council decision therefore represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ and the Appeals Council made this decision at step five of the sequential evaluation, finding that the claimant had the residual functional capacity ("RFC") to

perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, she could lift/carry/push/pull twenty pounds occasionally and ten pounds frequently, stand/walk for forty-five minutes at a time for a total of six hours in an eight-hour workday, and sit for fifteen minutes at a time for six hours in an eight-hour workday, but that she could only occasionally climb ladders/ropes/scaffolds, and frequently climb ramps/stairs, balance, kneel, crouch, and crawl. Additionally, the claimant could only reach, handle, finger, handwrite, and use a keyboard frequently with the left non-dominant hand. Furthermore, the claimant could understand, remember, and carry out simple instructions, but not detailed or complex instructions; occasionally engage on a superficial basis with supervisors, coworkers, and the public; maintain attention and concentration for extended periods without limits but only frequently working at a production rate pace; must avoid forced pace or assembly line tasks; and only occasionally adapt to change (Tr. 10, 31). The Appeals Council then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled under the framework of Medical-Vocational Rule 202.18, aka "the Grids," but also adopted the ALJ's step five finding that there was work that the claimant could perform, *e. g.*, auto machine tender and laundry folder (Tr. 8, 10-11, 35-36).

## Review

The claimant contends that the Appeals Council and ALJ erred by: (i) failing to properly assess her mental impairments under Listings 12.03 and 12.04 at step three, and (ii) failing to failing to properly evaluate her physical impairments when assessing her RFC

at step four.  The Court agrees with the claimant's second contention, and the decision of the Commissioner should therefore be affirmed.

The Appeals Council affirmed the ALJ's finding that the claimant had the severe impairments of disorders of the spine, neuralgia/neuritis of the bilateral ankles/feet, peripheral neuropathy, schizophrenia, and bipolar disorder (Tr. 9, 26).  The medical evidence relevant to the claimant's physical impairments reflects that in August 2016 the claimant presented to Atoka County Medical Center with complaints of left hip pain radiating down the left leg.  A scan was normal and she was discharged with pain medication (Tr. 390-396).  The next day, the claimant followed up with a primary care physician and was diagnosed with lumbar radiculopathy, essential hypertension, GERD, hyperlipidemia, and type II diabetes (Tr. 404).  September 2016 treatment notes likewise indicate diagnoses of, *inter alia*, diabetic autonomic neuropathy and lumbar radiculopathy (Tr. 731).  The claimant was sent to physical therapy for her back pain in September 2016 and notes indicate she presented with significant antalgic gait and difficulty completing transitional movements to any surfaces due to left lower extremity and low back pain with radicular sciatica (Tr. 734).  An October 2016 MRI of the lumbar spine revealed multilevel degenerative disc disease with varying degrees of neural foraminal narrowing most severe at the L4-L5 and L5-S1 intervertebral disc space (Tr. 426).  The claimant continued to complain of pain radiating down into her legs in April 2017 (Tr. 648).

As to her feet, the claimant had an x-ray on August 5, 2016, which indicated, *inter alia*, mild hallux valgus deformity with medial soft tissue bunion, small heel spur with calcification of the plantar fascia, and a linear 1 mm punctate foreign body superimposing

the nailbed of the great toe (Tr. 415). A physical exam in December 2016 noted that the claimant walked with a halting gait and a limp (Tr. 436). The claimant complained of a burning tingling with numbness in the toes of both feet and received at least seven neurolytic injections total in her feet (Tr. 651, 667, 780).

As to her mental impairments, the evidence reflects the claimant largely received behavioral health treatment for schizoaffective disorder and bipolar disorder through Choctaw Tribal Health. In December 2016, she underwent seven days of inpatient treatment after reporting hearing voices telling her she was better off dead (Tr. 435, 444-445). Upon release from inpatient treatment, the claimant continued to report anxiety, stress, and panic attacks at outpatient mental health treatment less than two weeks later (Tr. 460). Although she reported feeling better on December 22, 2016, the claimant was again admitted in February 2017 for inpatient mental health treatment for depressive symptoms and suicidal ideation with a plan (Tr. 679, 775). The claimant was discharged when inpatient hospitalization criteria were no longer met and instructed to follow up with outpatient providers for mental and physical impairments (Tr. 697-698). On April 11, 2017, the claimant was again admitted for depression and chronic suicidal thoughts, as well as continued hallucinations (Tr. 810). At outpatient treatment on July 20, 2017, the claimant reported not doing well, and that she was irritated, depressed, and lashing out at her mother; the clinician reported the claimant admitted to poor memory, attention, and concentration, and having to write everything down (Tr. 701).

The claimant's Choctaw Tribal Health physician of record was Dr. Kelly Andrzejczyk-Beatty (Tr., *e. g.*, 701). From December 4, 2016 through July 20, 2017, Dr.

Beatty completed three "Choctaw Trial Health Forms" in which she indicated that the claimant had been diagnosed with schizoaffective disorder and bipolar disorder (currently depressed), had no current work tolerance, and that she needed more treatment but should eventually be able to be employable from a mental health standpoint (Tr. 707-709). Dr. Beatty indicated that the claimant's condition affected her concentration and attention, and that she had crying spells and irritability, as well as hallucinations that made it difficult for her to interact socially (Tr. 707-709).

    As to her physical impairments, state reviewing physicians initially and upon reconsideration found that the claimant could perform light work with no additional manipulative or postural limitations (Tr. 110-112, 126-128). Dr. Burnard Pearce initially determined upon a review of the record that the claimant's mental impairments were nonsevere (Tr. 106-108). Upon reconsideration, Dr. Thomas VanHoose found that the claimant's schizophrenia and bipolar disorder were severe, and he found she had mild limitations in the ability to understand, remember, and apply information, and moderate limitations in the ability to interact with others and concentrate, persist, and maintain pace, but that she had no limitations in the ability to adapt or manage oneself (Tr. 122). In completing a mental RFC assessment, he further found she had moderate limitations in the typical three areas of ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 128-129). He concluded that she could perform three- to four-step repetitive tasks with routine supervision, relate to others on a superficial work basis, and adapt to a work situation (Tr. 129).

In his written decision at step two, the ALJ summarized the medical evidence in relation to determining the claimant's severe impairments (Tr. 26-27). At step three, the ALJ evaluated the claimant's mental impairments under Listings 12.03 (schizophrenia) and 12.04 (bipolar disorder), finding as to the "paragraph B" criteria for both listings that the claimant had mild limitation in the area of understanding, remembering, and applying information; marked limitation in the ability to interact with others; and moderate limitation with regard to both concentration, persistence, and pace, as well as adapting or managing oneself (Tr. 30). The ALJ further found that the evidence failed to establish the presence of the "paragraph C" criteria of either listing (Tr. 31). The Appeals Council adopted the ALJ's findings as to the "paragraph B" and "paragraph C" criteria at step three (Tr. 6-7, 9). Because the claimant did not have two marked limitations or one "extreme" limitation, the ALJ and Appeals Council found that claimant did not meet either listing (Tr. 7, 9, 31). At step four, the ALJ summarized the claimant's hearing testimony, the state reviewing physician opinions, and Dr. Beatty's three opinions as to the claimant's impairments and limitations but discussed none of the rest of the evidence in the record (Tr. 31-34). As to Dr. Beatty's three opinions, he rejected her opinion that the claimant could not work as an issue reserved to the commissioner, then asserted that the claimant's psychological impairments were only incapacitating while she was inpatient (Tr. 33). The ALJ assigned only some weight to the opinions of the state reviewing physicians as to the claimant's physical impairments, finding the claimant more limited as to the findings related to sitting/standing/walking and use of her upper extremities citing, *inter alia*, her more recent neurolytic injections (Tr. 32-33). The ALJ assigned little weight to the opinion

that the claimant's mental impairments were nonsevere, and some weight to the reconsideration opinion that the claimant's impairments were severe, but he further limited her to simple instructions rather than three- to four-step repetitive tasks (Tr. 33). The Appeals Council noted that the claimant submitted some additional evidence on appeal but did not exhibit it (Tr. 4-5). As to step four, the Appeals Council adopted the ALJ's assigned RFC and findings regarding the claimant's subjective statements without revisiting the evidence (Tr. 8). The Appeals Council ultimately determined that the claimant was not disabled (Tr. 9-11).

The claimant contends that the ALJ, and by extension the Appeals Council, failed in accounting for all her impairments in formulating the RFC, and the Court agrees. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003).

As an initial matter, the undersigned Magistrate Judge notes that although the ALJ *did* include some postural and manipulative limitations related to the claimant's physical impairments in the RFC, the ALJ at step four has connected no evidence (aside from an

acknowledgement that the claimant had undergone seven neurolytic injections in her feet) in the record to instruct this Court as to how such a limitation accounts for each of the claimant's severe impairments, *i. e.*, disorders of the spine, neuralgia/neuritis of the bilateral ankle/feet, peripheral neuropathy, schizophrenia, and bipolar disorder. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two.  He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.").  This was a significant omission here because each of these impairments can have limitations that directly impact the claimant's ability to perform work.  Instead, the ALJ should have explained why and/or how the claimant's severe impairments did not call for corresponding limitations in the RFC.  *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984).

More specifically, the ALJ and Appeals Council entirely failed at step four to account for evidence regarding the claimant's gait and difficulty walking, decreased range of motion, and radiating pain into the left lower extremity severe enough to warrant physical therapy, instead assigning an RFC wholly unconnected to any opinion or evidence

in the record. This is reversible error because the ALJ *is required* to consider the effects of all the claimant's impairments (individually and in combination) and account for them in formulating the claimant's RFC at step four, which he did not do. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F2d 382, 385-386 (7th Cir. 1984).

Finally, the Court notes that the above error likewise implicates an additional error regarding the ALJ's analysis of Dr. Beatty's opinions as part of formulating the claimant's RFC. The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion

entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Although the ALJ made reference to the proper regulation when he summarized Dr. Beatty's opinions, he completely failed to properly apply it when he imposed an RFC that rejected every treating, examining, and reviewing physician opinion in the record. As to Dr. Beatty's opinion specifically, he ignored the length of their treatment relationship (and her observations of the claimant *in between* inpatient treatments), and improperly rejected evidence as to her mental limitations, specifically with regard to her ability to concentrate, persist, and maintain pace. This implicates a failure to account for consistent, supportive evidence of the claimant's mental impairments, including treatment records reflecting depression and anxiety that interfered with her daily functioning. *See Hardman*, 362 F.3d at 681 (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer*, 742 F.2d at 385-386.

Because the Appeals Council, which adopted wholesale the ALJ's findings at step four, failed to properly evaluate the evidence available in the record, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 1st day of September, 2020.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**